**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**PATRICIA TUCKER,**

    **Plaintiff,**

**v.**                                                                           **Case No. 8:07-cv-2302-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

### I.

Plaintiff was fifty-seven years of age at the time of her administrative hearing in October 2006. She stands 5', 3" tall and, per her administrative filings, weighed 145 pounds. Plaintiff has a bachelor's degree in management information systems. Her past relevant work was as a director of information systems for a charitable organization and a sales clerk at a department store. Plaintiff protectively applied for disability benefits in October 2004, alleging disability as of May 1, 2002, by reason of a macular hole and detached retina in her right eye with related vision problems, eye and facial pain, slow speech, weight gain, dry

skin, and depression. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was not represented by counsel at the hearing and testified in her own behalf. The Plaintiff's husband, Stephen Tucker, also testified. Additionally, a vocational expert was called by the ALJ.

Plaintiff testified that she is no longer able to work at any job due to the pain in her right eye. By Plaintiff's description, she has a buckle around her eye and silicon oil in her eye to hold the retina in place. She has undergone four surgeries on her right eye.[1] When she tries to focus on an item, for example if she is reading, the buckle on top throbs and the pain is as if a rubber band snaps. If she continues to do what she is doing, she experiences increased pressure, like a fist in her eye. Artificial light is very rough on her eye. Plaintiff said that looking at a computer screen also really hurts, like a knife going in her eye.[2] Plaintiff testified she does not drive due to double vision and lack of peripheral vision. She stopped driving in October 2004 following her second eye surgery.

As for other impairments, Plaintiff testified that she has hypothyroidism, for which she takes medication and has been treated since 1980. Plaintiff denied any treatment with a mental health provider, noting that her issues with depression and anxiety were related to the thyroid problem. Although she testified she had taken medication for depression following

---

[1] However, she identified only three surgeries--she had a cataract removed from her right eye in 2002; repair of the macular hole and detached retina in August 2004; and she had the scleral buckle done in October 2004. (R. 333); *see also* (Doc. 14 at 1).

[2] The transcript also reflects that at one point during the hearing, the ALJ reduced the lights to accommodate Plaintiff.

her TMJ surgery in 1990, she does not currently take medication for depression, anxiety, or hypertension. When asked about issues that "disable" her from working, she acknowledged that the hypothyroid problem does not prevent her from working. While she continues to have problems with her TMJ, Plaintiff said that it is the pain in her eye that disables her from working.

Regarding her past work, Plaintiff testified that she worked for sixteen years in the computer field as a Director of Information Systems for the Easter Seals Society. She stated that she had to leave her job in November 1999 because it was eliminated when two charities merged. Thereafter, she went to work in sales at Dillard's department store for approximately one year,[3] but she had to leave that job because it became too physically difficult due to the amount of lifting required.

In terms of physical limitations, Plaintiff testified she has no difficulty standing, sitting or walking. Lifting is a problem and she cannot even lift ten pounds due to the pulling sensation on the eye or cheek. If she turns, she hits things because she has no peripheral vision or depth perception. Plaintiff testified that she is able to care for her own personal needs such as showering and shopping, although when she shops, her husband goes with her. She does some cooking, but her husband does a lot of it. He also does the laundry, and she is not able to clean. She does not attend any regular activities or belong to any groups. She does some limited computer work. As a result of her surgeries, she has lost all independence.

---

[3]The ALJ noted that according to Plaintiff's records, she worked at Dillard's in 1999 and earned $40,000. She did not work in 2000. In 2001 she earned $12,000 and in 2002 she earned $5,000.

She does not currently work and denies having health insurance. She does not receive any governmental assistance. In answer to the vocational expert, she indicated that her work for Easter Seals involved overseeing its accounting computer system. She was responsible for keeping the computers running, the accounting function, and supervising four billing employees. She also wrote a grant for a computer lab and she oversaw that. (R. 303-325, 327, 331-34).

Plaintiff's husband, Stephen Tucker, also testified. Reading from a letter, he testified that his wife has pain doing most household chores, including the dishes, laundry, and vacuuming. She cannot do these activities without pain around her eyes, especially if she is lifting things. He testified that she needs to sit in the dark, or at least turn the lights off to get some relief. He claims that she cries a lot, and their lives have been drastically changed since her eye problems. (R. 325-26).

Next, the ALJ took testimony from Nicholas Fidanza, a vocational expert ("VE"). Based on the Plaintiff's description of her job functions at Easter Seals, the VE opined that the best description of the job was that of "analyst," which is a skilled, sedentary position.[4] The VE described her past relevant work in a retail sales as requiring light physical exertion. The ALJ then fashioned a hypothetical question for the VE, which assumed a person with a residual functional capacity for sedentary work who could occasionally lift and carry ten pounds and frequently carry less than ten pounds, sit for six hours, stand for two hours with only occasional postural activities, and who has visual limitations with no vision in the right

---

[4]The Plaintiff agreed with the VE's description of the "analyst" position as identifying her job.

4

eye but an intact left eye, limited depth perception, and the need to avoid heights and moving machinery, but who has no communicative problems and is able to attend, concentrate, understand and carry out multi-step instructions, use judgment, adapt, and deal with changes. On this hypothetical, the VE opined that such a person could return to the past relevant work of the Plaintiff. With the added limitation of not being able to push or pull with the upper extremities more than a third of the time, the VE appeared to indicate that no past work would be available. Additionally, if such person could not lift ten pounds, the VE testified there would be no past relevant work available. Upon the original hypothetical and assuming limited depth and field of vision, with the added limitation of not being exposed to artificial light, the VE testified that it would be "virtually impossible" for Plaintiff to work without exposure to artificial light in some form. (R. 330-38).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Plaintiff's date last insured for benefits was December 31, 2006.

By her decision of February 9, 2007, the ALJ determined that while Plaintiff has severe impairments related to a detached retina in the right eye with resultant blindness, hypothyroidism, and hypertension, she nonetheless had the residual functional capacity to perform sedentary work with postural limitations and limitations for near visual acuity and field of vision in the right eye and depth perception in general. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work as an analyst. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 59-65). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

6

supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ failed to properly consider the claimant's allegations of pain and other non-exertional impairments;

(2) The ALJ failed to include a proper discussion of Ms. Tucker's inability to experience artificial light, nor did the ALJ address the VE's opinion that it 'would be virtually impossible for her to work without exposure to artificial light in some form;' and

(3) The ALJ failed to properly evaluate Ms. Tucker's credibility.

These claims are related in that each protests the ALJ's failure to fully and fairly address Plaintiff's testimony concerning limitations related to her right eye impairment. By

7

her first claim, Plaintiff urges that the ALJ failed to address the impact of her eye pain, blurred vision, light sensitivity, and reading limitation. While the ALJ credited her with being functionally blind in the right eye, Plaintiff contends the decision does not mention these other eye-related limitations. Plaintiff also contends that the decision does not properly address her credibility concerning these limitations. By her second claim, Plaintiff specifically points to her testimony that artificial light causes her eye pain and the testimony of the VE that it would be "virtually impossible" for her to work without exposure to some form of artificial light. She also urges that her pain complaints are supported by her surgical history and unrebutted, and the ALJ erred by failing to address or properly discredit the same. She cites SSR 96-8p in support of these arguments. Finally, she complains that the ALJ failed to properly discredit her subjective complaints in accordance with SSR 96-7p and this circuit's case law. She urges that the ALJ gave too much credence to the objective record. In conclusion, Plaintiff urges that on the basis of her truthful testimony, the case should be reversed for an award of benefits. (Doc. 14 at 9-15).

In response, the Commissioner argues that the ALJ properly addressed Plaintiff's subjective testimony and provided specific reasons for finding that it was not fully credible. Thus, the Commissioner points to the ALJ's reference to the normal vision in Plaintiff's left eye, the lack of any work limitations from her doctors, and the lack of medical support for the claims that she had pain when exposed to artificial light, looking at a computer screen, reading, or lifting more than a gallon of milk. In short, the Commissioner urges that Plaintiff ignores the lack of medical support for her alleged disabling symptoms. (Doc. 15 at 4-9).

8

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Where an ALJ decides not to credit a claimant's testimony about pain and limitations, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1562.

Here, the decision reflects that the ALJ clearly recognized that Plaintiff's claim for disability was based on her eye pain resulting from failed surgeries to repair a detached retina

and that she employed the applicable standard in reviewing Plaintiff's pain complaints.[5]
Additionally, while Plaintiff is correct that the ALJ failed to specifically mention her testimony about reading or special sensitivity to artificial light and blurred vision,[6] it is significant that these complaints were part and parcel of Plaintiff's pain complaints that I conclude were fully and fairly considered. By Plaintiff's testimony, she cannot work because most everything she does causes debilitating pain in her right eye (R. 316). She claims difficulty reading (R. 305), as well as double vision in the right eye and no peripheral vision (R. 313), and no depth perception (R. 323). When asked to further explain what happens with her eye, she stated that when she tries "to focus in on something like to read, the buckle on the top throbs, and it's almost like a rubber band snaps and if I continue on with what I'm doing, it, there's a pressure, like a, like a fist in the eye." (R. 322). Artificial light and computer screens are "really rough." *Id.* In looking at a computer screen, "the light reflecting back into the eye really hurts, causes pain." *Id.*[7] As noted above, the ALJ raised the artificial light issue

---

[5]Although the ALJ did not expressly reference the Eleventh Circuit's "pain standard," she did reference the corresponding regulatory provision at 20 C.F.R. § 404.1529 and related Social Security Rulings. (R. 62). These references and the findings thereunder (R. 64) reflect that the ALJ applied this circuit's standard. *See Wilson*, 284 F.3d at 1225-26.

[6]It is not entirely accurate that the ALJ did not mention blurred vision. As the decision notes, Plaintiff sought treatment from Dr. Thomas Wilkinson for blurred vision, among other conditions. (R. 62, 237, 242, 256). These complaints occurred when Plaintiff was still working. The post operative notes from the Center for Sight in 2004 also reflect complaints of double vision. (R. 154-77). However, the last note from Plaintiff's surgeon made no mention of complaints of blurred or double vision. (R. 300). The decision reflects that each of these records were considered.

[7]In her administrative filing, Plaintiff also claimed she could not work because of "strict positioning." She claimed she had to lay on her side or with her nose down. (R. 96-7). No such claim was made at the administrative hearing.

with the VE. I cannot read this record without concluding that the ALJ sought to fully develop this evidence.[8] Furthermore, in light of the ALJ's inquiry, I cannot agree with Plaintiff that the ALJ failed to consider all of these symptoms, even if some went unspecified in the decision. On this appeal, Plaintiff fails to convincingly demonstrate otherwise. In reaching this conclusion, I have carefully considered both SSR 96-7p and SSR 96-8p.

Under the applicable standard, the ALJ may discount subjective complaints by articulating explicit and adequate grounds. Here, the decision, when read in full, reflects the ALJ's fair review of the entire medical record, as well as the articulation of a number of explicit reasons why she did not fully credit Plaintiff's claims. For instance, the ALJ stated, "[t]he [ALJ] notes that the file does not reflect that there have been any specific limitations placed on the claimant regarding work or that any doctor has found the claimant disabled or unable to engage in work activities." (R.64). The ALJ observed that Plaintiff takes only over the counter Ibuprofen for pain and that her daily activities were inconsistent with allegations of wholly disabling and uncontrollable symptoms. *Id*. The ALJ further stated,

> In sum, objective medical evidence does not show the degree
> of symptoms and limitations alleged, nor does the medical
> and non-medical evidence shows (sic) that the claimant's
> impairments would reasonably be expected to result in
> functional loss to the degree alleged. The [ALJ] has
> considered the findings made on examinations, reports of
> treating and examining medical practitioners, the claimant's
> activities of daily living and the claimant's testimony and
> demeanor at the hearing.

---

[8]As promised at the hearing, the ALJ thereafter sought additional evidence from Plaintiff's long-time treating doctor, Dr. Wilkinson, who declined to respond (R. 225-29), and from her retina surgeon, Dr. Gremillion, who gave a brief reply which did not expressly indicate an opinion on disability (R. 300).

11

*Id.* These conclusions, particularly about the medical findings and evidence, must be read in the context of the ALJ's review of that record. Plaintiff was credited with blindness in her right eye and poor depth perception, which are both clearly documented by the record. However, nowhere in the medical record do I find that any treating or consulting source placed any specific limitations on Plaintiff's work by reason of these or any other impairments. Nor can I find where any doctor determined that she was disabled or unable to engage in any type of work. Upon my review, the treatment records offer little clinical support for Plaintiff's claim that pain from reading or being exposed to artificial light was so severe as to preclude all work. Indeed, I cannot find anywhere in this record where Plaintiff complained to a treating source about such limitations. Subsequent to her eye surgeries in 2004, the pertinent medical records are fairly sparse. An ophthalmologic consultative examination in December 2004 offers her little, if any, additional support. (R.178-82). A subsequent consultative examination in July 2005 documents post-operative right eye blindness, altered depth perception, and Plaintiff's complaints of distorted vision making reading nearly impossible, pain, and photophobia. Otherwise that doctor's findings are normal and no functional limitations are suggested. (R. 184-85). The final word on her pain complaints appears to be from her eye surgeon, Dr. Gremillion, who wrote in response to the ALJ's inquiry in November 2006 that, "[a]dditionally, she complains of *occasional* pain, which may be due to the scleral buckle present in the right eye, an implant required for the repair of the detachment. If the pain persists, the buckle may need to be removed. This would further complicate her medical condition." (R. 300) (emphasis added). While Plaintiff undoubtedly suffers from a severe impairment in her right eye that has caused significant

12

changes in her vision and occasional pains to her right eye, I am obliged to find that substantial evidence supports the ALJ's findings and conclusions that the evidence does not support her allegations that she is unable to read and work in front of a computer or in artificial light without debilitating pain.

Further, in reaching her conclusion, the ALJ did not place too much emphasis on the objective medical record to the exclusion of the remaining evidence. Nor does it appear that she gave undue emphasis to Plaintiff's daily activities and demeanor. The ALJ acknowledged Plaintiff's testimony that she was assisted in some activities by her husband. The regulations specifically call for the ALJ to consider daily activities in assessing pain complaints. 20 C.F.R. § 404.1529(c). The observations by the ALJ of Plaintiff's demeanor at the hearing are not wholly improper, especially where, as here, such reference was just one of several reasons offered by the ALJ for concluding that Plaintiff was overstating her functional loss. *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985). The decision reflects the ALJ's consideration of the whole of the records as required.

In conclusion, undoubtedly all would have been better served had the ALJ expressly addressed the complaints about reading, using a computer, and artificial light. However, given the ALJ's careful attention to the subjective complaints by Plaintiff at the hearing, her follow-up with treating doctors, and the state of the medical record ultimately before her, I cannot agree that Plaintiff's subjective complaints were not fully considered. Nor do I agree that such was not properly and adequately discounted consistent with the applicable standard.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 29th day of June 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record